UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA ANNE IKEWOOD,

                          Plaintiff,                    07-CV-6553

              v.                                        **DECISION**
                                                        **and ORDER**
XEROX CORPORATION,

                          Defendant.
_____

## INTRODUCTION

Plaintiff, Barbara Anne Ikewood ("Plaintiff"), brings this
action pursuant to Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. §§ 2000 et seq., the New York State Human
Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et
seq., alleging discrimination on the basis of her age and unlawful
retaliation by her current employer, Xerox Corporation ("Defendant"
or "Xerox"). See Compl. at ¶1. Plaintiff also alleges several state
law tort claims.  See Compl. at ¶42-59. Specifically, Plaintiff
alleges that she was denied several promotions because of her age,
that she was retaliated against after complaining that her
supervisor was "sexist" and protecting "the boys," and that she was
injured after an altercation with a co-worker who refused to train
her for a promotional opportunity. See Compl. at ¶9-22.

Defendant moves for summary judgment pursuant to Rule 56 of
the Federal Rules of Civil Procedure.  Defendant contends that

Plaintiff has not established a prima facie case of age discrimination or retaliation and that Plaintiff's state law claims are barred by the exclusivity provisions of the New York Worker's Compensation Law ("WCL"). See Def. Mem. of Law at 1. Plaintiff opposes Defendant's motion and argues that she has established a prima facie case of age discrimination and retaliation. See Pl. Mem. of Law. Plaintiff admits that her common law negligence claims for assault and battery and negligent hiring are barred by the WCL, however, she contends that her claims for intentional and negligent infliction of emotional distress fall within an exception to the exclusivity provisions of the WCL. Id. at 21-23. For the reasons set forth below, this Court grants Defendant's Motion for Summary Judgment in its entirety. Accordingly, Plaintiff's Complaint is hereby dismissed with prejudice.

## BACKGROUND

Plaintiff was born on July 12, 1949 and began working at Xerox in 1973. See Pl. Resp. to Def. Local Rule 56.1 Statement of Material Facts ("Pl. Resp.") ¶1-2[1]. Plaintiff is still employed by

---

[1]This Court notes that Plaintiff has submitted "Responses to Defendant's Rule 56.1 Statement of Undisputed Facts" and an additional "Local Rule 56.1 Counter Statement." As this Court has instructed Plaintiff's Counsel on the purpose of Local Rule 56.1 on more than one occasion, this Court will not consider Plaintiff's "Local Rule 56.1 Counter Statement" which does not comport to this rule. See Duckett v. Wal-Mart Stores, Inc., 2009 WL 995614 (W.D.N.Y. 2009); Szarzynski v. Roche Labaratories, Inc., 2010 WL 811445 (W.D.N.Y. 2010); Barkley v. Pennyan School Dist., 2009 WL 2762272 (W.D.N.Y. 2009); Kuchar v. Kenmore mercy Hosp., 2000 WL 210199 (W.D.N.Y. 2000); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (discussing Local Rule 56.1 in the Southern and Eastern Districts of New York which is essentially the same as this District).

Xerox, but has been on disability leave since August 2008. <u>See</u> Ikewood Aff. at ¶11.

Plaintiff is a member of the production employees union, Local 14A Rochester Regional Joint Board Xerographic Division, known as UNITEHERE! ("UNITEHERE"). <u>Id.</u> at ¶3. During the relevant time period, Xerox and UNITEHERE were parties to a collective bargaining agreement ("CBA") that governed the terms of their employment relationship. <u>Id.</u> at ¶4. Employees in Plaintiff's department were classified as either a Z2 or a Z4 pay grade. <u>Id.</u> at ¶5. Plaintiff was classified as a Z2. <u>Id.</u> at ¶6. The CBA provided that promotions from a Z2 to a Z4 pay grade were filled by selecting the applicant with the most seniority, and a promotional opportunity was to be posted within the department prior to seeking outside applicants. <u>Id.</u> at ¶7-8; <u>See</u> Waidl Dep. at 24.

A promotional opportunity from a Z2 to a Z4 position ("DT Prep") was posted in 2005 or 2006. <u>See</u> Waidl Dep. at 24; <u>cf.</u> Ikewood Aff. at ¶46. The hours posted for the DT Prep position were approximately 8:30a.m. through 4p.m. <u>See</u> Pl. Resp. at ¶9. Plaintiff did not apply for the position because she could not work the posted hours. <u>See</u> Pl. Resp. at ¶10. Plaintiff informed her supervisor, Joseph Waidl ("Waidl"), that she would be interested in the position if the hours were 6a.m. though 2:30p.m., as they had been for the previous DT Prep. <u>See</u> Waidl Dep. at 36. However, Waidl testified that the later shift was posted to correspond with

customer schedules, as well as the schedules of those working with the DT Prep within Xerox. Id. Michael Stolt, who had less seniority than Plaintiff, was promoted to DT Prep because he was the only applicant, and therefore, the most senior person to apply. See Pl. Resp. at ¶10-11. Mike Stolt was approximately 46 or 47 at the time of his promotion.

In March 2005, the position of "Team Lead" was posted in Plaintiff's department. Id. at ¶12. Team Lead is a Z2 position, but the selected individual receives a pay increase based on increased responsibility. Id. at ¶13. The CBA provides that the Team Lead position is chosen by a vote among the production employees themselves. Id. at ¶14. Plaintiff applied for the position, but she lost the vote to Bill Galski, a co-worker who was the same age as the Plaintiff at the time. Id. at ¶15-17.

In the Spring of 2007, Plaintiff requested training to serve as a back-up for the DT Prep position held by Stolt. Id. at ¶18. While Plaintiff would continue to be classified as a Z2, she would be paid as a Z4 for the time she actually filled in for Stolt. Id. at ¶19. The DT Prep back-up at that time, Ron Fiorentino ("Fiorentino"), was less senior than Plaintiff, and therefore, Plaintiff could "bump" Fiorentino if Stolt required a back-up. Id. at ¶20-21.

Xerox instructed Stolt to train plaintiff for the back-up position, but he continuously failed to do so. Id. at ¶22; Waidl

Dep. at 63. Later, in April 2007, Stolt again refused to train Plaintiff for the position, threw a binder at her and told her that he would not train her. Id. at ¶22; Waidl Dep. at 65. Plaintiff claims that she followed Stolt to his office and he yelled "piss on the union" and that he would "cut [her] throat." Id. at ¶22. Stolt denied that he threatened to cut Plaintiff's throat, but told management that he said, "You would cut your own mother's throat for a nickel!" Id. at ¶25; see also Williams Aff. Exhibit E.

Plaintiff reported the incident to management, and management went to Stolt's office and escorted him out of the building. Id. at ¶27-28. After investigating the incident, Xerox suspended Stolt for 5.25 days and issued Stolt a "D" level labor report. Id. at ¶30-31. Xerox then asked another employee to train plaintiff for the position. Id. at ¶34-5. Plaintiff met with this employee, but a DT Prep back-up was not needed between April 2007 and August 2008, when Plaintiff began disability leave. Id. at ¶35-38; Ikewood Aff. at ¶11. Plaintiff states that following this incident she was alienated and isolated within her department as managers and co-workers "kept their distance." Id. at ¶44. In September 2008 Plaintiff's department at Xerox was closed. Id. at ¶36.

On May 25, 2007 Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in which she alleged retaliation and age discrimination based on the DT Prep back-up position and the April 2007 incident with Stolt. The EEOC

issued a Notice of Right to Sue on August 7, 2007, and Plaintiff filed this action on November 7, 2007.

**<u>DISCUSSION</u>**

A party is entitled to summary judgment if it can demonstrate "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." <u>See</u> Fed.R.Civ.P. 56(c). Once the movant has "'show[n]'" or "point[ed] out...that there is an absence of evidence to support the nonmovant['s] case," the burden shifts to the nonmovant. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325-27 (1986). To discharge his burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. <u>See</u> <u>Lizardo v. Denny's, Inc.</u>, 270 F.3d 94, 101 (2d Cir.2001).

The court must draw all factual inferences in favor of the party against whom summary judgment is sought and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmovant. <u>See</u> <u>Anderson</u>, 477 U.S. at 255; <u>Celotex Corp.</u>, 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007). The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. <u>See</u> <u>Kulak v.</u>

City of New York, 88 F.3d 63, 71 (2d Cir.1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.").

### A. **Plaintiff's State Law Tort Claims**

Plaintiff concedes that her common law negligence claims for assault and battery and negligent hiring and supervision are barred by the exclusivity provisions of the WCL. See Pl. Mem. of Law at 21-2. Accordingly, Plaintiff's Fifth and Eighth Causes of Action are dismissed with prejudice. See N.Y. Worker's Comp. Law §§ 11, 29(6); see also Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997)(citing Burlew v. American Mut. Ins. Co., 63 N.Y.2d 412 (1984)(holding that negligence claims against an employer are barred by the Workers Compensation Law).

Plaintiff's Seventh Cause of Action for Negligent Infliction of Emotional Distress is similarly barred by the exclusivity provisions of the WCL. See Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985) (citing  Hart v. Sullivan, 84 A.D.2d 865 (3d Dept. 1981); Thompson v. Maimonides Medical Center, 86 A.D.2d 867 (2d Dept. 1982)); see also Pasqualini v. MortgageIT, Inc., 498 F.Supp.2d 659, 666 (S.D.N.Y.2007). Plaintiff cites Acevedo v. Consolidated Edison Co. of New York, Inc.,189 A.D.2d 497 (1st Dept. 1993), for the proposition that her negligent infliction of emotional distress claim is not barred by the WCL because she has alleged intentional infliction of emotional distress. See Pl. Mem. of Law at 21. However, Acevedo delineates a narrow exception to the exclusivity provision of the WCL for torts which involve an "intentional or deliberate act by the employer directed at causing harm to the particular employee." Acevedo, 189 A.D.2d at 500-501. Plaintiff misreads Acevedo to permit her claim for negligent infliction of emotional distress simply because she has alleged a claim for intentional infliction of emotional distress. This is not the case, as the WCL bars negligence claims against an employer, even where a plaintiff has alleged intentional torts. See e.g. Pasqualini, 498 F.Supp.2d at 666-667 (dismissing plaintiff's negligent infliction of emotional distress claims where plaintiff also alleged intentional infliction of emotional distress).

Further, Plaintiff has not presented evidence (and has not addressed Defendant's argument to that effect) that Defendant intentionally or deliberately acted in a manner that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Sheila C. v. Povich 11 A.D.3d 123 (1st Dept. 2004) (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983)). In support of her claim, Plaintiff states that Xerox returned Stolt to his position as DT Prep at the same rate of pay following the April 2007 incident. See Pl. Mem. of Law at 22. She argues that this conduct was a deliberate, extreme and outrageous act by Xerox directed at causing her injury. Id. This Court does not find that the conduct of Xerox in this case rises to the level of extreme and outrageous conduct contemplated by the tort of intentional infliction of emotional distress. Further, Plaintiff has not presented any evidence to support her claim that Xerox's actions were intentionally directed at her to cause her harm. To the contrary, Xerox investigated the April 2007 incident, suspended Stolt for 5.25 days and issued him a negative report. Xerox also asked a different employee to train Plaintiff for the DT back-up position. The fact that Stolt returned to his position following his suspension and was not demoted is not conduct "outside all bounds of decency" and is not sufficient evidence to allow a reasonable

jury to find that Xerox intentionally attempted to harm Plaintiff.
Therefore, this Court finds that Plaintiff's claim for negligent
infliction of emotional distress is barred by the WCL and her claim
for intentional infliction of emotional distress is unsupported by
the evidence presented and therefore, is insufficient to withstand
Defendant's Motion for Summary Judgment. Accordingly, Plaintiff's
Sixth and Seventh causes of action are hereby dismissed with
prejudice.

**B. <u>Plaintiff's Age Discrimination Claims</u>**

Plaintiff's age discrimination claims are analyzed under the
burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v.
Green</u>, 411 U.S. 792, 802 (1973). <u>See also Reeves v. Sanderson
Plumbing Prods., Inc.</u>, 530 U.S. 133, 146-149 (2000); <u>St. Mary's
Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-511 (1993); <u>Texas Dep't of
Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253-256 (1981).[2] First,
Plaintiff must establish a prima facie case of discriminatory
failure to promote by demonstrating that: "(1) she is a member of
a protected class; (2) she 'applied and was qualified for a job for
which the employer was seeking applicants'; (3) she was rejected
for the position; and (4) the position remained open and the
employer continued to seek applicants having the plaintiff's

_____

[2]Claims brought under the ADEA are analytically identical to claims brought under the
NYSHRL. <u>See</u> <u>Tyler v. Bethlehem Steel Corp.</u>, 958 F.2d 1176, 1180 (2d Cir. 1992) (noting that
the elements and burden of proof issues for claims under the ADEA and NYSHRL are the same,
and New York courts look to federal law in deciding cases under the NYSHRL).

qualifications." See Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir.1998) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802,(1973))). Once a plaintiff has established a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. See Burdine, 450 U.S. at 254. The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination and that discriminatory animous is the true reason for the defendant's actions. See McDonnell-Douglas Corp., 411 U.S. at 802; see also St. Mary's Honor Ctr., 509 U.S. at 510-11; Reeves, 530 U.S. at 143.

In the instant case, Plaintiff alleges that she was denied promotions between 2005 and 2007 because of her age. Specifically, she alleges that she was denied a promotion to Team Lead in March 2005, she was denied a promotion to DT Prep in 2005 or 2006 and she was denied training for a promotion to DT Prep back-up in April 2007. Defendant contends that Plaintiff's claims for the Team Lead and DT Prep positions are untimely, Plaintiff has not established a prima facie case of age discrimination and, even if she had, Plaintiff has not established that the failure to promote occurred under circumstances giving rise to an inference of age discrimination.

1. <u>March 2005 Team Lead Promotion</u>

As an initial matter, this Court notes that Plaintiff's claim for discriminatory failure to promote, based on the Team Lead promotion, was not included in her discrimination charge made to the EEOC in May 2007 (which described only the April 2007 incident), and it occurred more than 300 days prior to her filing the EEOC Charge. Plaintiff's claim is therefore untimely. 29 U.S.C. § 626(d)(1)(B); <u>See</u> <u>Moncrief v. New York Public Library</u>, 343 Fed. Appx. 627, 2009 WL 21713137 (2d Cir. 2009). However, even if, as Plaintiff argues, she could establish a continuing pattern of discrimination to overcome the statute of limitations (which this Court does not find that she has, <u>see</u> <u>Byrne v. Telesector Res. Group, Inc.</u>, 2005 WL 464941 *6 (W.D.N.Y.)(citing <u>Lambert v. Genesee Hosp.</u>,10 F.3d 46, 53 (2d Cir. 1993)("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."))), Plaintiff has not established a prima facie case to support her claim for age discrimination under the ADEA and NYSHRL.

Plaintiff has not proffered evidence that Defendant was in any way involved in the selection of the Team Lead. In fact, Plaintiff admits that the Team Lead was selected by a vote among the production employees themselves. <u>See</u> Pl. Resp. ¶12-17; <u>See</u> Waidl Dep. at 31-2, 43. Plaintiff has offered no evidence that Xerox influenced the vote or participated in the vote in any way.

Accordingly, while Plaintiff applied for the Team Lead position, she has not established that she was rejected by <u>Defendant</u> or that the position remained open and <u>Defendant</u> continued to solicit applications from other individuals having Plaintiff's qualifications. <u>Petrosino</u>, 385 F.3d at 226. Further, Plaintiff cannot established that this promotion occurred under circumstances giving rise to an inference of age discrimination, as Bill Galski, the person selected as Team Lead, was the same age as the Plaintiff at the time of the vote. <u>See</u> Pl. Resp. ¶16. Accordingly, Plaintiff's claim for age discrimination based on the alleged failure to promote her to Team Lead in 2005 is dismissed with prejudice.

2. <u>DT Prep Promotion</u>[3]

Defendant contends that Plaintiff has not established a prima facie case of age discrimination based on the failure to promote her to DT Prep because, as Plaintiff admits, she did not apply for the position. <u>See</u> Waidl Dep. at 35-6. If Plaintiff had applied for the position, Defendant states that she would have been hired, as she had the most seniority in her department. <u>Id.</u> However, Plaintiff was unable to work the hours posted for the position. <u>Id.</u>

_____

[3] Defendant also argues that Plaintiff's claim with respect to the DT Prep promotion is untimely, however, there is a dispute as to the actual date the DT Prep position was posted. Defendant states that it was posted in February 2005 and Plaintiff argues that it was posted in 2006, although she does not provide the actual date. However, because this Court finds that Plaintiff has not established a prima facie case of discriminatory failure to promote with respect to the DT Prep position, the timeliness issue is moot.

Plaintiff contends that the hours were purposefully changed to the later shift to dissuade her from applying for the position, however, Plaintiff has not provided any evidence to support her contention other than her own self-serving testimony. Further, Defendant has offered evidence that the hours were changed for business reasons, so that the DT Prep was working during the hours when customers and other Xerox employees that coordinated with the DT Prep were working. See Waidl Dep. at 36.

In Petrosino, the Second Circuit held that an employee is barred from bringing a claim for discriminatory failure to promote where the employee did not specifically apply for the position. 385 F.3d at 227 (citing Brown, 136 F.3d at 710). The Court explained that a plaintiff cannot escape this requirement by establishing that she generally requested to be considered for the position or by alleging an "aura of discrimination" that "somehow discouraged her from filing a formal application." Id. In the instant case, Plaintiff cannot establish a prima facie case of discriminatory failure to promote based on the DT Prep position because she did not apply for the position. Further, Plaintiff's unsupported allegation that the hours were purposefully changed is insufficient to create a material issue of fact on a motion for summary judgment, and, in any event, is insufficient to overcome the requirement that she must have applied for the job. Id.; See also D'Amico, 132 F.3d at 149("non-moving party may not rely on mere

conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful."). Therefore, this Court grants Defendant's motion to dismiss plaintiff's age discrimination claim with respect to the DT Prep position and Plaintiff's claim is hereby dismissed with prejudice.

### 3. DT Prep Back-Up Position

Plaintiff next claims that she was the victim of age discrimination because Defendant failed to provide adequate training for the DT Prep back-up position, and therefore, she was ultimately denied this promotion. Defendant contends that the DT Prep back-up position was not a promotion, as Plaintiff would receive a wage increase only for the hours that Stolt actually required a back-up; Plaintiff did not suffer an adverse employment action, as Xerox ultimately found another employee to train Plaintiff as the DT Prep back-up; and, in any event, Plaintiff cannot establish that any of these events occurred under circumstances giving rise to an inference of age discrimination.

To sufficiently state a claim for failure to train, Plaintiff must establish that "(1) she was within the protected age group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of discrimination." See Holtz v. Rockefeller & Co., Inc.,258 F.3d 62, 77 (2d Cir. 2001)(citing

<u>Schnabel v. Abramson</u>, 232 F.3d 83, 87 (2d Cir.2000)).  While this Court acknowledges that the failure to train can amount to an adverse employment action (<u>see</u> <u>Holtz</u>, 258 F.3d at 77-78), Plaintiff has not established that Defendant actually failed to train her for the DT Prep position.  Plaintiff admits that following the April 2007 incident in which Stolt refused to train Plaintiff, Defendant assigned another employee to train her. <u>See</u> Pl. Resp. ¶34-35. While Plaintiff complains that she only met with this individual on one occasion and that she did not receive the complete training needed to perform the DT Prep back-up position, she has not offered any evidence that Defendant knew or had reason to know that she had not been trained. <u>See</u> Williams Dep. at 45. Plaintiff's supervisor, Guy Williams, testified that Plaintiff had received the proper training for the position. <u>Id.</u>  This Court does not find that Plaintiff's dissatisfaction with the level of training she received is equivalent to an adverse employment action. <u>See</u> <u>Garber v. New York City Police Dept.</u>, 1997 WL 525396 *7 (S.D.N.Y.)("Plaintiff's dissatisfaction with the [employer's action] standing alone, does not support his claim of an adverse employment action."); <u>see</u> <u>also</u> <u>Schackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398 (5th Cir. 1999)(holding that a denial of training peripheral to plaintiff's main duties was not an adverse employment action where the training was only necessary for back-up duties peripheral to her main tasks).

Further, even if Plaintiff could establish that Defendant actually failed to train her and that such a failure amounts to an adverse employment action, the record is devoid of any evidence that would lead a reasonable jury to conclude that the alleged failure to train occurred under circumstances giving rise to an inference of age discrimination. Plaintiff argues that she has established an inference of discrimination because at one time a co-worker told her she should retire because she was too old and the same co-worker called her "stupid" and a "fat ass." See PL. Mem. at 10. Plaintiff further cites the April 2007 incident with Stolt as evidence of discriminatory intent. However, stray remarks, without more, are not evidence of discriminatory intent, and the isolated comments of Plaintiff's co-workers cannot be imputed to Xerox. See Szarzynski v. Roche laboratories, Inc., 2010 WL 811445 *9 (W.D.N.Y.)(citing Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001)("stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination")).

Notably, all of the employees in Plaintiff's department were over the age of 40, and therefore, all were within the protected age group under the ADEA. See Williams Aff. at ¶9. Likewise, there is no evidence that Defendant treated anyone outside of the protected age group more favorably, or continued to seek others with Plaintiff's qualifications to serve at the DT back-up, or

criticized Plaintiff's performance in age degrading terms, or that the sequence or timing of events would lead a reasonable juror to believe that the underlying motive for Defendant's actions was discriminatory. See Ralkin v. New York City Transit Authority, 62 F.Supp.2d 989. 996-7 (E.D.N.Y. 1999) (citing cases which list the types of circumstantial evidence a plaintiff could put forth to establish an inference of discrimination).

Therefore, this Court finds that Plaintiff has not established a prima facie case of age discrimination for the alleged failure to train her for the DT back-up position. Accordingly, Plaintiff's age discrimination claim is hereby dismissed with prejudice.

### C.   **Plaintiff's Retaliation Claim**

Plaintiff alleges that she was subject to discriminatory retaliation because of her age and gender in violation of Title VII and the NYSHRL. Plaintiff's retaliation claims are also analyzed under the McDonnell Douglas burden-shifting framework. See McDonnell Douglass, 411 U.S. at 802. Plaintiff must first establish a prima facie case of discriminatory retaliation by showing: (1) participation in a protected activity known to the Defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and adverse action. See Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir.

1996), <u>cert</u>. <u>denied</u>, 1997 WL 71191 (May 19, 1997); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted).

Defendants contends that Plaintiff did not engage in a protected activity. Plaintiff alleges that she complained to her supervisors and the union on multiple occasions about Defendant's failure to follow the CBA by properly posting promotions[4], failure to train her and failure to promote her "notwithstanding her seniority[5]." <u>See</u> Pl. Mem. of Law at 15-16. She also contends that she complained to Waidl that he favored "the boys." <u>Id.</u>[6] Plaintiff admitted in her affidavit and deposition that, in complaining that Waidl favored "the boys," she was referring to three specific men (Ron Fiorentino, Bill Galski and Mike Stolt) out of eight male employees in her department and that she did not complain of gender discrimination to Waidl. <u>See</u> Ikewood Dep. at 39-40, 56. However, the record reveals that she also told another supervisor, Guy Williams, that she believed Waidl was sexist and that he did not

---

[4]This District has previously held that a Xerox employee's grievance regarding Xerox's failure to uphold the CBA was not a protected activity under Title VII. <u>See</u> <u>Monroe v. Xerox Corp.</u>, 664 F.Supp.2d 235 (W.D.N.Y. 2009), Siragusa, J. This Court also notes that Plaintiff's counsel also represented the plaintiff in <u>Monroe v. Xerox</u>.

[5]This Court notes that "seniority," although age related, is not a protected trait under Title VII or the NYSHRL. <u>See</u> <u>Criley v. Delta Air Lines, Inc.</u>, 119 F.3d 102, 105 (2d Cir. 1997)(citing <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 611-12 (1993).

[6]Plaintiff also cites a 2002 or 2003 incident in which a co-worker said that he would not train her because she was a woman. <u>See</u> Pl. Mem. of Law at 13-14. However, the co-worker was not part of management, the record does not indicate that Plaintiff ever told management of the incident and any claim plaintiff has with respect to this isolated comment is barred by the statute of limitations. <u>See</u> <u>supra</u> at Part B.

like women.  See Williams Dep. at 23-24.  Plaintiff's formal complaint regarding the April 2007 incident with Stolt does not appear to reference age or gender discrimination.  See Brummel v. Webster Central School Distict, Transportation Department, 2009 WL 232789, *17-*18 (January 29, 2009)(citing Int'l Healthcare Exchange, Inc., v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y.2007) (to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring).  However, in Plaintiff's EEOC Charge, she cites the April 2007 incident to support her discrimination charge.  Therefore, viewing the facts in the light most favorable to the Plaintiff, this Court finds that Plaintiff's complaints to management regarding her supervisor Waidl and her EEOC Charge constitute a protected activity.  See Kelley v. Sun Microsystems, Inc., 520 F.Supp.2d 388 (D.Conn. 2007)(citing Sumner v. Postal Service, 899 F.2d 203, 209 (2d Cir. 1990) and McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001) for the proposition that plaintiff need not make a formal complaint of discrimination and plaintiff need only have a "good faith, reasonable belief that she is opposing" unlawful discrimination to constitute a protected activity).

Defendant also argues that Plaintiff has not established that she suffered any adverse employment action because of her complaints.  This Court agrees.  To establish an adverse employment

action, Plaintiff must show that the Defendant's actions caused a materially adverse change in the terms and conditions of her employment. Specifically, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 207 (2d Cir. 2006) (quoting Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006)). "Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. at 209. Examples of adverse employment actions include: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000).

Plaintiff contends that Defendant refused to train her, failed to take remedial action following the April 2007 incident with Stolt and disciplined plaintiff although she had not been disciplined before her complaints. She further argues that following the 2007 incident with Stolt, she was alienated and

isolated within her department.  Plaintiff's allegations do not amount to a material adverse employment action, as Plaintiff did not experience <u>any</u> change in her employment status.  Rather, she remained in the same position at a Z2 pay grade until she was placed on disability leave in August 2008.

Further, as discussed above, Plaintiff has not established that Defendant failed to train her.  To the contrary, Plaintiff admits that Defendant asked another employee to train her for the DT Prep position following the incident with Stolt.  Plaintiff has not presented any credible evidence that Defendant failed to train her for any other position or that she lost any benefit due to Defendant's alleged failure to train her as DT Prep, as it is uncontested that Stolt did not require a back-up from the time he returned from his suspension until the department closed in 2008.

Plaintiff's complaint that Defendant failed to take remedial action following the April 2007 incident is similarly baseless. Plaintiff argues that she requested Stolt be transferred to another department and that she expected he would be demoted, but he returned to work in the same department at the same pay grade. It is uncontested that Stolt was suspended for 5.25 days and issued a negative labor report.  Although Plaintiff expected a more severe punishment, this fact does not convert Defendant's decision into an adverse employment action.  Further, the fact that Plaintiff subjectively felt alienated and isolated within her department does

not amount to an adverse employment action for which Defendant is responsible. See Coffed v. Xerox Corp., 2009 WL 3019512 (W.D.N.Y. 2009)(finding no adverse action where supervisors avoided plaintiff following a discrimination complaint).

Finally, Plaintiff claims that in 2006 she was verbally disciplined for arguing with a co-worker and that she had not been disciplined prior to her complaints.  However, such disciplinary actions are not material adverse employment actions to support a retaliation claim. See Chang v. Safe Horizons, 254 Fed. Appx. 838, 2007 WL 3254414 (2d. Cir. 2007)("In particular, we note that oral and written warnings do not amount to materially adverse conduct in light of our reasoning in Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir.2006), in which we stated that "[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute an adverse employment action.").

Therefore, this Court finds that Plaintiff has not established a prima facie case of retaliation.  Accordingly, Plaintiff's Third and Fourth Causes of Action for Retaliation are dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgement is granted in its entirety.  Plaintiff's Complaint is hereby dismissed with prejudice.


ALL OF THE ABOVE IS SO ORDERED.

___s/ Michael A. Telesca___
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 18, 2011